# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL ACTION NO. 3:18-CV-00345-KDB-DCK

|  |  |
|---|---|
| **TRUE HOMES LLC,** |  |
| **Plaintiff,** |  |
| **v.** | **ORDER** |
| **CLAYTON HOMES, INC., ET AL.,** |  |
| **Defendants.** |  |

**THIS MATTER** is before the Court on the parties' cross Motions for Summary Judgment (Doc. Nos. 103, 108). Plaintiff True Homes, LLC ("True Homes"), a North Carolina residential home builder, asserts claims for trademark infringement under the Lanham Act, 15 U.S.C. ¶¶ 1501, *et seq*. and related state law claims against Defendants Clayton Homes, Inc., ("CHI"), CMH Manufacturing, Inc., ("CMH Mfg"), CMH Homes, Inc., ("CMH Homes"), Clayton Properties Group, Inc. ("Clayton Site-Built"), Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt") and 21st Mortgage Corp. ("21st Mortgage") (collectively "Clayton"), a parent company and subsidiaries that manufacture, sell and finance both manufactured homes (often called "mobile homes") and site-built homes. Specifically, True Homes alleges that Defendants' use of the marks TRU HOMES and TRU infringe the Plaintiff's TRUE HOMES mark.

The Court has carefully considered this motion and the parties' briefs and exhibits. For the reasons discussed below, the Court will **DENY** True Homes' motion, **DENY** the motions of Defendants CMH Mfg. and CMH Homes and **GRANT** the motions of Vanderbilt, 21st Mortgage, CHI and Clayton Site-Built.

1

# I.    LEGAL STANDARD

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Vannoy v. Federal Reserve Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003)**.** "The burden on the moving party may be discharged by 'showing' ... an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id.* at 324.

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014); *see also Anderson*, 477 U.S. at 255. "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015) (quoting

10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)). "The court therefore cannot weigh the evidence or make credibility determinations." *Id*. at 569 (citing *Mercantile Peninsula Bank v. French* (*In re French*), 499 F.3d 345, 352 (4th Cir. 2007)).

However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Also, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Id*. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Id*. at 249-50.

In the end, the question posed by a summary judgment motion is whether the evidence as applied to the governing legal rules "is so one-sided that one party must prevail as a matter of law." *Id*. at 252.

## II.     FACTS AND PROCEDURAL HISTORY

True Homes began using its TRUE HOMES mark on January 16, 2008 and has been continually using that mark as its name since that time. The TRUE HOMES mark was registered in the United States Patent and Trademark Office ("PTO") on May 31, 2016 (Registration Number 4,967,069) and has been continuously maintained by Plaintiff since its registration. Plaintiff alleges that the TRUE HOMES mark was adopted by True Homes' founders—Mark Boyce and Dan Horner— because it represented a variety of meanings, including an integrity and alignment with

the company's culture, "being true like a plumb line," and being true to the company's founding vision and values. *See* Doc. No. 109-8, 129:20-130:2; Doc. No. 109-9, 39:3-15.

CHI is a Delaware holding company with its principal place of business in Delaware. (Doc. No. 65-2 ¶¶ 3, 4). CHI's subsidiary CMH Mfg. produces manufactured homes at plants across the country. CMH Mfg. sells these homes to retail dealerships, including another CHI subsidiary CMH Homes. (*See* Doc. No. 104-1, 62:22-25). CMH Mfg. does not build site-built homes (Doc. No. 104-1, 43:22–44:1); instead, another company in the Clayton corporate family, Clayton Site-Built, builds site-built homes. (*See* Doc. No. 104-5, 17:18–18:7). CMH Homes operates retail dealerships or "Home Centers" to sell CMH Mfg.'s manufactured homes and homes produced by other manufacturers to consumers. (*See* Doc. 104-2, 77:13-14). Clayton describes these retail operations as located on major traffic corridors with homes displayed on the lot similar to a car dealership (Doc. No. 105-1, 12–13) and alleges that manufacturers' brand names, such as TRU HOMES, are not listed on the highway signage. (Doc. No. 104-4, 42:21-25). Vanderbilt finances approximately half of the purchases from CMH Homes (Doc. No. 104-7, 56:10-15) and 21st Mortgage finances manufactured home purchases from independent retailers. (Doc. No. 104-8, 12:10-15).

In 2012, CMH Mfg. began selling what it terms a "bottom-of-the-market" manufactured home, which was branded as TRU MH. (Doc. No. 104-1, 59:24–60:6, 69:19-20, 70:3-15). Clayton alleges that the word "TRU" for the TRU MH brand originated with the phrase "Trailers [R] Us," (*Id*., 58:25–59:7), but that provenance appears to have only been an internal reference which was not discussed or marketed publicly. CMH Mfg. applied to register the mark TRU MH with the PTO and received registration on January 1, 2013. *See* Reg. No. 4,269,707. Plaintiff has not challenged the registration of the TRU MH mark. (*See* D.E. 58).

4

In January and March 2016, CMH Mfg. began discussing a "rebrand" of TRU MH to TRU Homes. Clayton alleges that in May 2016 CMH Mfg. performed a trademark search for "tru homes" (but not True Homes) and found no registrations. (Doc. No. 104-13, 106). Not long after these developments, in the summer and through the fall of 2016, True Homes entered into discussions with CHI and its subsidiary Clayton Site-Built (Doc. No. 109-4, ¶ 2). The purpose of the discussions, initiated by Clayton, was to explore the possible acquisition of True Homes. *Id*. However, the discussions did not lead to an agreement.

On September 29, 2016, less than two weeks after those discussions concluded, CMH Mfg. filed an intent-to-use application for the trademark TRU HOMES. CMH Mfg. began using the mark TRU HOMES on March 27, 2017 and the TRU mark in December 2016. It also created a new website – owntruhomes.com – that CMH Mfg. and CMH Homes use in marketing manufactured homes under the TRU HOMES mark. (Doc. No. 109-5, 68:1-6; 71:13-18). The PTO granted the registration for TRU HOMES on October 3, 2017 and for TRU on January 16, 2018. *See* Reg. Nos. 5,303,180 and 5,381,741. Both marks are registered for "Manufactured homes; Modular non- metal homes." The Parties dispute the extent of Clayton's knowledge of the TRUE HOMES mark, with Clayton disclaiming knowledge beyond CHI and Clayton Site-Built and Plaintiff countering that the relevant officials at the various Clayton entities shared offices and could reasonably be found to have generally known about the TRUE HOMES mark.

From its adoption of the TRU HOMES and TRU marks until at least the end of October 2018 (when the parties reached a temporary agreement to limit use as consideration for Plaintiff not pursuing a preliminary injunction), CMH Mfg. and CMH Homes have used those marks to sell manufactured homes without True Homes' consent. As with Clayton's knowledge of Plaintiff's mark, the parties disagree about the extent of the evidence of actual confusion between the brands.

5

While, predictably, there is no evidence that anyone purchased a TRU HOMES mobile home believing that it was a TRUE HOMES site built home, Plaintiff has proffered evidence that it has "repeatedly" received calls confusing True Homes with the defendants' Tru Homes brand, including calls to True Homes looking to purchase manufactured homes, a call from a disgruntled owner of a Tru Home mobile home and even a call from a Clayton employee asking about receiving fewer than expected manufactured homes in a recent delivery. *See* Doc. No. 109 at 5-8. In turn, Clayton dismisses these mistakes as *de minimus*, also arguing that there is no evidence that potential customers of True Homes, i.e. those seeking to buy a site-built home, were confused.

This action was filed on June 29, 2018, with an Amended Complaint filed on March 18, 2019. In its operative pleading, Plaintiff seeks injunctive relief enjoining Defendants from continuing to use the allegedly infringing marks and its related website, monetary damages based on their alleged unjust enrichment, exemplary damages and attorneys' fees and costs. The parties' cross motions for Summary Judgment were filed in September 2020 and are now ripe for decision.

### III.    DISCUSSION

The Lanham Act protects trademark registrants from "any reproduction, counterfeit, copy, or colorable imitation of a registered mark" by allowing the registrant to commence a civil action against trademark infringers for disgorgement of profits or other damages. 15 U.S.C. § 1114(1). 15 U.S.C. §1125(a) establishes liability when a person uses in commerce any word or name, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship or approval of his or her goods by another person**.**

To demonstrate trademark infringement, a plaintiff must show both (1) "that it owns a valid and protectable mark," and (2) "that the defendant's use of a 'reproduction, counterfeit, copy, or

colorable imitation' of that mark creates a likelihood of confusion." *CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006) (citation omitted) (quoting § 1114(1)(a) ); *see also Variety Stores, Inc. v. Wal-Mart Stores, Inc*., 888 F.3d 651, 659–67 (4th Cir. 2018).

Because all of Plaintiff's claims flow from its allegation of trademark infringement, the Court's analysis of the parties' summary judgment motions must focus on that allegation, in particular the question of whether or not a reasonable jury could find a "likelihood of confusion" with respect to the parties' respective marks.[1] Because the Court finds that a reasonable jury could find either the existence or absence of a likelihood of confusion, summary judgment cannot be granted to True Homes, CMH Mfg. and CMH Homes. However, as to Vanderbilt and 21st Mortgage there is no evidence linking those companies to any wrongful conduct and with respect to CHI and Clayton Site-Built, True Homes has not established the Court's personal jurisdiction over those entities (nor made an attempt to establish such personal jurisdiction beyond an unsuccessful attempt to pierce the corporate veil of Clayton's unremarkable integrated corporate enterprise). Accordingly, those defendants are entitled to summary judgment.

---

[1] While Defendants nominally dispute that Plaintiff's TRUE HOMES mark is valid and protectable, because the Court finds, *infra*, that the TRUE HOMES mark is "suggestive" it is presumptively valid and protectable so the Court need not separately discuss the first factor of the trademark infringement analysis. *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000); *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984) ("'… a mark which is either suggestive or arbitrary is strong and presumptively valid' … [and] 'will ordinarily be protected against the use of the same or a confusingly similar mark on the same product, or related products, and even on those which may be considered by some to be unrelated but which the public is likely to assume emanate from the trade mark owner'"(internal citations omitted)).

### A.    Likelihood of Confusion

The proper analysis of "likelihood of confusion" is well described in *Variety Stores*, a recent decision of the Fourth Circuit. In that case, the court reversed a district court's award of summary judgment based on the existence of genuinely disputed material facts as to whether a likelihood of confusion exists, noting that the district court's ruling reflected a "clear misapprehension of summary judgment standards" and that a "correct application of the Rules is especially important in a protracted civil action such as this one, in which subsequent proceedings are closely intertwined with the disposition of the summary judgment motion." *Variety Stores*, 888 F.3d at 659–67. Moreover, the *Variety Stores* court's conclusion – delivered after a thorough examination of many of the numerous factors discussed below – is particularly instructive: "[w]e reiterate that 'the likelihood of consumer confusion is an 'inherently factual' issue that depends on the unique facts and circumstances of each case. … Whether [Defendant's] mark created a likelihood of confusion is indeed a question that the jury, consisting of ordinary consumers and using the nine factors as a guide, is well-suited to evaluate."[2] As described below, the same reasoning and conclusion holds "tru(e)" here.

To determine whether a likelihood of confusion exists, the Court must examine nine factors: (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion;

---

[2] The court further stated that, "[l]ikelihood of confusion is 'frequently a fairly disputed issue of fact on which reasonable minds may differ' and 'a matter of varying human reactions to situations incapable of exact appraisement.'" (citing *Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 318 (4th Cir. 1992)).

(8) the quality of the defendant's product; and (9) the sophistication of the consuming public. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 314 (4th Cir. 2017) (quoting *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009)). The evaluation of these nine factors is a flexible test and "there is no need for each factor to support [the plaintiff's] position on the likelihood of confusion issue." *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 171 (4th Cir. 2006). In sum, the factors are not a "rigid formula" but rather a "guide" of relevant considerations in determining likelihood of confusion. *See Id.* at 320.

### 1.     The Strength or Distinctiveness of the Plaintiff's Mark

The Fourth Circuit has observed that the first factor, the strength or distinctiveness of the True Homes mark, is "paramount" in determining the likelihood of confusion because a consumer is unlikely to associate a weak or undistinctive mark with a unique source "and consequently will not confuse the allegedly infringing mark with the senior mark." *Variety Stores*, 888 F.3d at 661, (citing *Grayson O*, 856 F.3d at 314–15 (quoting *Pizzeria Uno*, 747 F.2d at 1527)).  The mark's overall strength or distinctiveness "comprises both conceptual strength and commercial strength." *Id.* As described below, the Court finds that this overall strength factor is genuinely disputed because, although True Homes' mark is "suggestive," it is arguably conceptually weak because of the use of "true" in other marks in the construction industry. Also, its commercial strength is genuinely disputed.

With respect to conceptual strength, "[m]easuring a mark's conceptual or inherent strength focuses on the linguistic or graphical 'peculiarity' of the mark, considered in relation to the product, service, or collective organization to which the mark attaches." *CareFirst*, 434 F.3d at 269 (quoting *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990)). The mark's "peculiarity" is measured by "placing the mark 'into one of four categories of distinctiveness: (1)

generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful.'" *Grayson O*, 856 F.3d at 315 (internal citation omitted). Here, the parties disagree on whether the TRUE HOMES mark is descriptive or suggestive.

A mark is suggestive if it "suggests rather than describes some characteristic of the goods to which it is applied and requires the consumer to exercise his imagination to reach a conclusion as to the nature of the[] goods." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 934 (4th Cir. 1995). Suggestive marks, along with fanciful marks, "are inherently distinctive, and thus receive the greatest protection against infringement." *Grayson O*, 856 F.3d at 315. A mark is descriptive if it "identifies a characteristic or quality of an article or service." *Id.* Descriptive marks—such as "5 Minute glue" or "After Tan post-tanning lotion"—"merely describe a function, use, characteristic, size, or intended purpose of the product" and are not inherently distinctive. *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996). Descriptive marks do not receive trademark protection unless "they have acquired a 'secondary meaning,' that is, if 'in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself.'" *Id.* (quoting *Dayton Progress Corp. v. Lane Punch Corp.*, 917 F.2d 836, 839 (4th Cir. 1990)). True Homes has not attempted to establish secondary meaning; rather, it contends that the TRUE HOMES mark is "suggestive" rather than "descriptive."

In *Variety Stores*, the court noted that drawing a line between descriptive marks and suggestive marks can often be difficult, and "[a] helpful rule of thumb is that if the mark imparts information directly, it is descriptive, but if it stands for an idea which requires some operation of the imagination to connect it with the goods, it is suggestive." *Variety Stores*, 888 F.3d at 661. Also, "[b]ecause the USPTO will not register descriptive marks without a showing that the mark

has acquired 'secondary meaning,' the USPTO's determination, as in this case, that it does not need proof of secondary meaning 'constitutes prima facie evidence' that the mark is suggestive." *See id.*

The Court agrees with the Plaintiff that the mark TRUE HOMES is suggestive rather than descriptive. The word "true" does not necessarily describe a particular "function, use, characteristic, size, or intended purpose" of a home. Instead, the concept of "trueness" or, as Defendants put it, being "fully realized," "honest," or "legitimate,"[3] requires some imagination to connect it with an object such as a house or home. In other words, for some a "true" home might be one that is quality built, for another it might one that is fairly or honestly marketed and for a third it might evoke an idyllic place for a family. Indeed, the fact that its potential meanings are multi-fold reflects that the term is not "descriptive" of any particular thing, but rather takes on the meaning ascribed to it by the consumer. This is the essence of a "suggestive" trademark.[4]

However, the Court's finding that the TRUE HOMES mark is suggestive does not fully resolve the issue of the mark's conceptual strength because the frequent prior use of a portion of the mark in other marks, particularly in the same field of merchandise or service, may illustrate a lack of conceptual strength. *See id.* at 662. Indeed, "consumers are unlikely to associate a mark with a unique source if other parties use the mark extensively." *Id.* On this point, Defendants argue

---

[3] The Court does not find Defendants' cases holding the word "true" to be descriptive in other contexts (personal fit services and "True Value") to be persuasive. *See* Doc. No. 115, 9-10. In those quite different circumstances, a single common accepted meaning of the word true (such as being "accurate") more readily applies to the services or goods being provided.

[4] While it is not dispositive, Defendants' argument that the similar mark TRU is not only suggestive but "arbitrary or fanciful" makes their argument that the TRUE mark is descriptive even less convincing. *See* Doc. No. 115, 10. Although Defendants argue that TRU is an acronym, it bears no initials and there is no evidence that any consumer would know of the alleged internal creation of the name from "Trailers R Us," as distinguished from being understood to take the meaning of "TRUE," which is clearly how it would be read. So, if TRU is "arbitrary or fanciful" then TRUE is at least "suggestive."

11

that there is substantial evidence of the use of "True-based" marks in the residential construction industry, and, in fact, Plaintiff has acknowledged the existence of at least 46 trademark registrations that included the word "True" in the industry. (D.E. 104 ¶ 26). While Plaintiff correctly notes that the Court generally must look at the mark as a whole, *see Booking.com B.V. v. U.S. Patent & Trademark Office*, 915 F.3d 171, 181 (4th Cir. 2019), in light of this extensive use of the "true" mark in this industry (and elsewhere),[5] the "conceptual strength" of the suggestive TRUE HOMES mark is plainly disputed.

Even if the Court were to find that True Homes' mark is conceptually weak (which it does not), the commercial strength of a mark can sometimes be more important than its conceptual strength. *Variety Stores*, 888 F.3d at 663 (citing *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc*., 405 F. Supp. 2d 680, 690–91 (E.D. Va. 2005) (citing 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 11:83 (4th ed. 2005)). If a mark has sufficient commercial strength such that consumers would "associate the mark with a unique source," it may be considered strong despite any conceptual weakness. *Id*. As in *Variety Stores*, the Court finds that there is a genuine dispute as to whether True Homes' mark is commercially strong, and thus it is therefore unable to determine on summary judgment – for either party – the overall strength and distinctiveness of the mark.

The Court considers many factors to determine a mark's commercial strength: "(1) advertising expenditures; (2) consumer studies linking the mark to a source; (3) sales success; (4) unsolicited media coverage of the product; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the mark's use." *See Grayson O*, 856 F.3d at 316. Here, as with "conceptual

---

[5] As of August 25, 2020, in total, the PTO identified 6,775 live registrations that included the term "true." (D.E. 104 at p. 8 n.2).

strength," both sides have produced sufficient evidence to put the commercial strength of Variety's marks in genuine dispute.

True Homes argues that it has significant evidence of the commercial strength of its mark, including advertising expenditures of approximately $1,000,000 per year; consumer satisfaction studies linking the True Homes mark to the product and company; sales success showing increasing sales throughout the history of the company, with revenues ranging from over $48 million in 2008 to $397 million in 2018; attempts to plagiarize the mark (although only defendants' use of Tru Homes is cited); and the length and exclusivity of the mark's use since the company's inception in January 2008. *See* Doc. No. 123 at 5. In response, Defendants contend that "evidence of extensive third-party use … demonstrates that [a] mark lacks commercial strength ...." *CareFirst*, 434 F.3d at at 270, and also point to an absence of consumer studies linking its mark to the company (eliding the fact that the mark is the same as the name of the company). *See* Doc. No. 105 at 20.

Thus, when viewing the evidence alternatively in the light most favorable to each non-moving party, the Court concludes that the commercial strength and the overall strength of the TRUE HOMES mark is genuinely disputed such that a reasonable jury could resolve this "paramount" issue in either party's favor.

### 2.    The Similarity of the Two Marks

The second factor is the similarity of the two marks.  The Plaintiff's mark is TRUE HOMES and the challenged mark is TRU HOMES. "[I]n evaluating the similarity of two marks, ... the marks need only be sufficiently similar in appearance, with greater weight given to the dominant or salient portions of the marks." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 936 (4th Cir. 1995). With the exception of the silent "e" in True, the marks look

Case 3:18-cv-00345-KDB-DCK   Document 128   Filed 11/05/20   Page 13 of 26

and "sound" the same, with the dominant portion of the mark being the first word TRU(E). Accordingly, the Court finds this factor strongly favors the Plaintiff.

### 3. The Similarity of the Goods the Marks Identify

Beyond the similarity of the marks, the Court must consider the similarity of the goods the marks identify. The Court finds this is a closer question on which reasonable minds could differ based on how the "goods" at issue are viewed. Defendants argue that a "manufactured home" is very different from a "site-built home," and "consumers do not confuse trailers for site-built homes." *See Hoffman v. Foremost Signature Ins. Co.*, 989 F. Supp. 2d 1070, 1081 (D. Or. 2013) (finding manufactured homes and site-built homes are not of "like kind and quality"); *Vermillion v. CMH Homes, Inc.*, 2012 WL 2700392, at *5 (S.D. Ohio July 6, 2012).

While the Court agrees that it would be unlikely for a consumer to confuse a manufactured home and a site-built home sitting side by side (depending, of course, on the size and setting of the homes), for purposes of determining the likelihood of an improper "association" as to the source of the goods, Plaintiff's argument that the goods should both be viewed as "homes" is not unreasonable. Even if consumers can readily distinguish among types of homes, they may still associate a similar mark for both manufactured and site-built homes with the same source. Indeed, the "Clayton" corporate family includes companies that make and sell mobile homes, others that are in the site-built home business and still others that work with both types of homes. Therefore, this factor is genuinely disputed among the parties.

### 4. The Similarity of the Facilities used by the Markholders

The fourth factor is the similarity of the facilities used by the markholders. In examining this factor, the Court has been directed to examine whether "the parties compete[ ] in a similar manner in overlapping markets," or whether "there are basic differences between plaintiff's and

14

defendant's modes of distributing their products at these facilities." *See Variety Stores*, 888 F.3d at 664 (internal citations omitted). Here, there is no credible dispute that TRU manufactured homes are sold through Home Centers similar to car dealerships, whereas 75% of True Homes' sales are through real estate agents. Also, the relative cost of the respective types of homes is different, making it unlikely that the same consumers are considering both products. Accordingly, the Court finds that there is not a genuine dispute that the parties do not compete in a similar manner in overlapping markets. Thus, this factor favors the Defendants.

**5.**     Similarity of Advertising

The next factor is similarity in advertising. "In comparing advertising, we look at a variety of factors: the media used, the geographic areas in which advertising occurs, the appearance of the advertisements, and the content of the advertisements." *See CareFirst*, 434 F.3d at 273. As with other factors, the parties disagree on the interpretation of the facts and how they should be weighted to come to a conclusion. Defendants emphasize that True Homes advertises on television, radio, and billboards while TRU HOMES and TRU brands are not advertised on television, radio, or billboards. Defendants further allege that their marketing is directed to wholesale retailers rather than consumers directly (although they concede that when transported down the interstate, part of the TRU manufactured home may be wrapped in plastic containing the TRU HOMES or TRU logo, which would advertise the name to the general public). On the other hand, True Homes argues that both products are marketed through the companies' respective websites (using similar color palettes), which it says Defendants' expert agrees is "the most effective form of advertisement," with "nine out of ten customers looking online before they even visit a builder." *See* Doc. No. 117 at 10-11. Defendants characterize

their website as only "informational," which Plaintiff disputes and alleges that the website is engaged in marketing manufactured homes to the public.

In sum, the Court finds that this issue is genuinely disputed. Accordingly, it is not properly resolved on summary judgment.

### 6. The Defendants' Intent

The sixth factor that must be considered is the Defendant's intent. The determination of a party's "intent" is often a question of fact because it must be inferred from circumstances rather than direct evidence of intention. If there is more than one permissible inference as to the parties' intention, then the question of intent is a triable issue of fact. *See Wrangler Apparel Corp. v. United States*, 931 F. Supp. 420, 426 (M.D.N.C. 1996)(citing *Bear Brand Hosiery Co. v. Tights, Inc.,* 605 F.2d 723, 726 (4th Cir.1979)).  Here, again, the parties urge the Court to weigh different circumstances and inferences. The Defendants point to circumstances which suggest that the selection of the TRU HOMES mark was not prompted by an intent to confuse the buying public, including the alleged lack of awareness of the TRUE HOMES mark by those who chose the TRU HOMES mark, the initiation of the potential brand change prior to meeting with TRUE HOMES to explore a potential acquisition and the "natural progression" of the new brand name from the one initially adopted.

On the other hand, Plaintiff asks the Court to allow the jury to determine the credibility of those assertions, arguing that Defendants' witnesses' claimed lack of awareness, their proximity to each other, and the timing of the introduction of the TRU HOMES mark, literally weeks after breaking off talks with True Homes, is more than adequate circumstantial evidence in support of an argument that the introduction was intentional and with knowledge of the existence of the TRUE HOMES mark. *See* Doc. No. 117 at 14 (Alleging that Defendants' witnesses who

16

disclaimed knowledge of TRUE HOMES not only work in the "same building," but "in the same room").

Although the Court does find the circumstantial evidence of intent proffered by Plaintiff to be thin, considering the full record and giving Plaintiff the benefit of all inferences, it cannot say that the issue should be taken from the jury at summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (holding that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

**7.** Actual Confusion

The seventh factor is actual confusion. In *Variety Stores*, the court discussed the importance and limits of the inquiry into actual confusion:

> Although actual confusion is "often paramount," *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 162 (4th Cir. 2014) (quoting *CareFirst*, 434 F.3d at 268), "[i]t is well established that no actual confusion is required to prove a case of trademark infringement," *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 263 (4th Cir. 2007); *see also Super Duper, Inc. v. Mattel, Inc.*, 382 Fed.Appx. 308, 313 (4th Cir. 2010) ("[T]he absence of such proof does not preclude a party from proving a likelihood of confusion based on a compilation of other evidence.").
>
> However, "the presence of actual confusion can be persuasive evidence relating to a likelihood of confusion," *Louis Vuitton*, 507 F.3d at 263, and, conversely, "the absence of any evidence of actual confusion over a substantial period of time ... creates a strong inference that there is no likelihood of confusion," *CareFirst*, 434 F.3d at 269.

*Variety Stores*, 888 F.3d at 665-666.

Here, Plaintiff alleges there is evidence of actual confusion, including the customer service team at True Homes on multiple occasions fielding calls from individuals – both potential customers and an employee of defendants – that it says indicates confusion between the defendants Tru Homes products and True Homes. Defendant argues that this evidence of confusion is "de

17

minimis" and that Plaintiff offers no evidence of any actual mistaken purchasing decisions. While True Homes has not identified any TRU manufactured home buyer who purchased a trailer confused that it was built by Plaintiff, True Homes' evidence of actual confusion is relevant to whether there is a likelihood of confusion as to the association of the similar marks with the different companies. So, as with a number of the other factors discussed above, there is a genuine dispute on the facts and the resulting weight to be given to whatever actual confusion the jury finds.

**8.** The Quality of the Defendant's Product

The eighth factor, the quality of the Defendant's product, has garnered relatively little attention from the parties, with Defendant arguing that the factor is irrelevant. Although Plaintiff contends that mobile homes are "inferior" to site-built homes, this factor more typically applies in circumstances where the defendant sells a cheap, "knock-off" imitation of the plaintiff's product. *See Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 467. "In cases . . . involving non-competitive products, it is irrelevant whether the non-competitive user's goods or services are of higher, equal, or inferior quality." *IDV N. Am., Inc. v. S & M Brands, Inc.*, 26 F. Supp. 2d 815, 832 (E.D. Va. 1998). As discussed above, the Court finds that Defendants' mobile homes compete in a related but different market than Plaintiff's site-built homes so the Court agrees with the Defendants that this factor has limited relevance to the Court's decision on the likelihood of confusion.

**9.** The Sophistication of the Consuming Public

The final factor is the sophistication of the consuming public, which is intended to measure, based on the nature and circumstances of the purchasing decision, how careful a purchaser is likely to be in determining the source of the goods prior to making the purchase. *See Shakespeare Co. v.*

18

*Silstar Corp. of Am., Inc.*, 110 F.3d 234, 242 (4th Cir. 1997). The Court agrees with Defendants that, "a person buying a 'big ticket' item" such as a home would ordinarily be expected to be a more careful buyer than the impulse purchaser or the purchaser of a relatively inexpensive item. *See Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 504 n.10 (5th Cir. 1979). Therefore, this factor favors the Defendants, although its effect is somewhat muted by the fact that both products are sold to the general public who are not necessarily sophisticated in determining the association of related products in a given industry.

In summary, Factor 2 favors the Plaintiff, Factors 4 and 9 favor the Defendants, Factor 8 is not relevant and Factors 1,3, 5, 6 and 7 are genuinely disputed. Accordingly, weighing all the factors, the Court finds that the "inherently factual" determination of likelihood of confusion should be decided by the jury and neither side is entitled to summary judgment on that issue.

### B.    Plaintiff's Claims for Monetary Damages

In addition to injunctive relief, attorneys' fees and costs, True Homes seeks monetary damages from the Defendants. The Lanham Act provides that a plaintiff who establishes a violation of § 1114(1)(a) is entitled "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). *See Exclaim Mktg., LLC v. DirecTV, LLC*, 674 F. App'x 250, 256–59 (4th Cir. 2016). Further, the statute gives the Court discretion to "assess such profits and damages" and "enter judgment for such sum as the court shall find to be just, according to the circumstances of the case" in the event that the amount of the recovery based on profits is either inadequate or excessive. 15 U.S.C. § 1117(a). However, the amount awarded must "constitute compensation and not a penalty." *Id.*

While the statute does not give the Court detailed guidance on the process for awarding damages, the Fourth Circuit has "identified six factors to guide the process" of "weigh[ing] the

19

equities of the dispute and exercis[ing] its discretion on whether an award is appropriate and, if so, the amount thereof." *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 174–76 (4th Cir. 2006). Those factors are: "(1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off." *Id*. at 175.

Defendants ask the Court to rule at summary judgment that True Homes is not entitled to monetary damages in any amount. *See* Doc. No. 121 at 10-12. The Court declines that invitation and will wait to rule on the amount of damages or profits to which Plaintiff is entitled (without directing that issue to the jury) after all the evidence has been presented and the jury has determined if trademark infringement has been established. However, without prejudging the credibility and force of the evidence to be presented on the factors listed above, the Plaintiff is forewarned that the Court, consistent with the law, will not award damages or profits merely on speculation that plaintiff lost sales or profits, or that defendant gained them unlawfully. *See Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 464–65 (5th Cir. 2001) (quoting *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 695 (6th Cir. 2000)) (noting that "the principles of equity do not warrant an award of defendant's profits" in the absence of proof of damages or profits); *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 330 F. Supp. 2d 668, 672 (E.D. Va. 2004), *aff'd*, 141 F. App'x 129 (4th Cir. 2005).

To obtain disgorgement of profits True Homes must prove that Defendants "unjustly benefited" as a result of the proven infringement, not just that they used the challenged mark in a profitable business. *See Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 521 (4th Cir. 2003) (copyright disgorgement not awarded where plaintiff offered "only speculation as to the

existence of a causal link between the infringement and the revenues"). Accordingly, the Court will require Plaintiff to offer such proof to obtain a monetary award, but, of course, if it does, will enter judgment in the full amount proven.

### C. Claims Against 21st Mortgage and Vanderbilt

Beyond its argument on the absence of a likelihood of confusion discussed above, Defendants 21st Mortgage and Vanderbilt ask the Court for summary judgment based on the alleged absence of evidence that they used the challenged marks TRU or TRU HOMES in commerce. In response, Plaintiff does not allege that these Defendants, who admittedly financed many of the sales of the TRU HOMES branded manufactured homes, themselves used the challenged marks but instead argues that they may be found liable under the theory of indirect or "contributory" infringement. Contributory infringement is a judicially created doctrine under which liability may be imposed upon those who facilitate or encourage infringement. *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 163 (4th Cir. 2012). In *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 854 (1982), the Supreme Court explained that, "if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit."

However, it is not enough to have general knowledge that some percentage of the purchasers of a product or service is using it to engage in infringing activities; rather, the defendant must supply its product or service to "identified individuals" that it knows or has reason to know are engaging in trademark infringement. *Rosetta Stone*, 676 F.3d at 163 (citing *Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417, 439 n. 19 (1984)) (contributory

trademark infringement requires a showing that the defendant "intentionally induc[ed] its customers to make infringing uses" of the marks or "suppl[ied] its products to identified individuals known by it to be engaging in continuing infringement").

Plaintiff has not proffered evidence sufficient for a reasonable jury to find that either Vanderbilt or 21st Mortgage knew that CMH Mfg. or CMH Homes were engaged in trademark infringement or that they "intentionally induced" those Defendants to engage in trademark infringement. Simply providing financing services to the customers of a related corporate entity is insufficient to establish either element of contributory infringement. *See Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007); *Danze & Davis Architects, Inc. v. Legend Classic Homes, Ltd.*, 2012 WL 13046845, at *4 (S.D. Tex. Jan. 5, 2012).

Plaintiff's only evidence in support of its position is offered as to Vanderbilt (but not 21st Mortgage). True Homes alleges that an email to CMH Mfg from Melanie Jones, a legal coordinator who worked mostly for Vanderbilt, demonstrates contributory infringement because in the email she stated that, "the TRU mark was accepted and we now must file a statement of use … and we must use before October 11, 2017." *See* (D.E. 117-2). However, this email from a member of the legal staff related to statutory administrative deadlines is not evidence that Vanderbilt knew the TRU mark was infringing nor that it was inducing infringement. Further, there is no evidence that Vanderbilt filed a "statement of use" with the PTO for the TRU mark or that it ever used the mark in commerce.

Accordingly, the Court finds that Plaintiff has not established a genuinely disputed factual issue and Vanderbilt and 21st Mortgage are entitled to summary judgment as a matter of law on Plaintiff's claim of "contributory" trademark infringement, which appears to be the only grounds asserted to support the trademark infringement claim against these defendants.

### D. Personal Jurisdiction Over CHI and Clayton Site-Built

Finally, Defendants CHI and Clayton Site-Built seek summary judgment on the grounds that the Court lacks personal jurisdiction. When a court's personal jurisdiction is challenged, the question is one for the judge, with the burden on the plaintiff to prove the grounds for jurisdiction by a preponderance of the evidence. *Mylan Laboratories, Inc. v. Akzo, N.V.,* 2 F.3d 56, 59–60 (4th Cir.1993); *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). However, "when the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). In deciding whether the plaintiff has made the requisite showing, the Court must construe all allegations and evidence available relating to the issue of personal jurisdiction in the light most favorable to the plaintiff. *Id*.

Rule 4 of the Federal Rules of Civil Procedure prescribes that state law controls the extent to which a federal court may exercise personal jurisdiction over a defendant. Fed. R. Civ. P. 4(k)(1)(A). Accordingly, North Carolina's Long Arm Statute, N.C. Gen. Stat. Ann. § 1-75.4, governs the reach of federal courts in North Carolina over out-of-state defendants, subject to the federal constitutional constraints of the Due Process Clause of the Fourteenth Amendment on the state's application of its long-arm statute. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011). Courts have long held, however, that North Carolina's long-arm statute extends to the maximum boundaries allowed by the Due Process Clause; therefore, what would otherwise be a two-step analysis, *English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990),

essentially folds into one: "whether the defendant has such 'minimal contacts' with the forum state that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan,* 259 F.3d 209, 215 (4th Cir. 2001) (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (US 1945)).

To establish minimum contacts, a plaintiff may pursue either general or specific jurisdiction. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc*., 293 F.3d 707, 711–12 (4th Cir. 2002). To establish general jurisdiction, the defendant's activities in the state must have been "continuous and systematic." *Id*. A court may exercise general personal jurisdiction over a corporation only in a state where the corporation is "essentially at home"—*i.e.*, its state of incorporation and principal place of business. *BNSF Railway Co. v. Tyrell*, 137 S. Ct. 1549, 1558–59 (2017); *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1777–78, 1780, 1784 (2017); *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 132 (4th Cir. 2020). If specific jurisdiction is alleged, the court exercises its power over a defendant when defendant's contacts within the state are the basis of the plaintiff's cause of action. *Id*.

Plaintiff does not offer a direct response to CHI and Clayton Site-Built's personal jurisdiction argument and, more importantly, fails to provide an evidentiary basis for the Court exercising personal jurisdiction under either general or specific jurisdiction. While it is Plaintiff's burden to come forward with evidence supporting jurisdiction, CHI and Clayton Site-Built point out that neither one has sufficient affiliation with North Carolina that would support general jurisdiction. *See* D.E. 64-2 ¶ 2; D.E. 64-2 ¶¶ 4– 14; D.E. 65-2 ¶¶ 3, 5–16.

Further, there is no evidence of a connection between the controversy and these defendants' contacts with the forum. True Homes alleges that CHI and Clayton Site-Built infringed upon True Homes' trademark through use of the TRU HOMES or TRU marks. However, Plaintiff has not

offered evidence that CHI and Clayton Site-Built have used the TRU HOMES or TRU marks to market or sell any goods or services in North Carolina. Thus, any contacts that CHI or Clayton Site-Built may have with North Carolina are not related to this infringement action. *Fidrych*, 952 F.3d at 140 ("[N]one of the wrongs [defendant] is alleged to have committed took place in [the forum state].").

Instead of making a case to support personal jurisdiction, True Homes provides an extensive argument that the Court should "pierce the corporate veil" and find that CHI and Clayton Site-Built should be found liable along with CMH Mfg. and CMH Homes because CHI "treats its various subsidiaries … as a single business enterprise." *See* Doc. No. 117 at 21. The Court finds that this argument is without merit. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ( stating the "general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries.").

While CHI plainly operates a large integrated corporate enterprise, Plaintiff has failed to establish that CHI fraudulently used the corporate form to avoid liability with a sham corporation. *See Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 349 (4th Cir. 1998); *Minute Man Anchors, Inc. v. Oliver Techs., Inc.*, 2005 WL 1871164, at *9 (W.D.N.C. Aug. 5, 2005). "[A] common central management alone is not a proper basis for disregarding separate corporate existence." *IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 309 n.5 (4th Cir. 2003).

Therefore, there are no proper grounds on which to disregard the separate corporate entities of the various Defendants and CHI and Clayton Site-Built are entitled to summary judgment based on the Court's lack of personal jurisdiction.

25

## IV.    ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1.  Defendants CMH Mfg. and CMH Homes' Motion for Summary Judgment  (Doc. No. 103) is **DENIED;**

2.  Defendants CHI, Clayton Site-Built, Vanderbilt and 21st Mortgage's Motion for Summary Judgment  (Doc. No. 103) is **GRANTED**;

3.  Plaintiff's Motion for Summary Judgment is **DENIED**; and

4.  This case shall **proceed to trial on the merits on the remaining claims** in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: November 4, 2020

Kenneth D. Bell
United States District Judge